[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant Planning Zoning Commission of the Town of Montville (Commission) to grant, with ten conditions, a special permit application for the excavation, in excess of 500 yards, of earth material. The application was dated August 13, 1999 and described the proposed project as follows: "Special permit renewal to excavate in excess of 500cy of material." (Return of Record [ROR] 3.) A public hearing on the application was held on March 14, 2000. At a meeting held on April 25, 2000 the Commission approved, with conditions, a special permit to remove 20,000 cubic yards of earth material from Phase 5, shown on the applicant's site plan. The plaintiffs filed an appeal, dated May 9, 2000, which was dismissed on November 1, 2000 because of improper service, Corradino, J. [29 Conn.L.Rptr. 47.]The present appeal, filed under General Statutes § 8-8 (q), is dated November 6, 2000. A request to file an amended complaint dated January 18, 2001 was granted on June 5, 2001, Hurley, JTR. The plaintiffs claim the subject conditions attached to the special permit approval are illegal, arbitrary and an abuse of Commission's discretion. The plaintiffs did not appeal the scope of the special permit. A motion to intervene, dated January 11, 2001, filed by Joseph F. Matera, Lois M. Matera, Michael Matera, Thomas H. Turner, Katherine Turner, Steven Ravin, Laurie J. Ravin, Brian Joiner and Janet Joiner (Intervenors) was granted on January 2, 2002, Hurley, JTR.
Aggrievement
The defendant Commission admits that the plaintiffs are aggrieved. From the evidence presented at a hearing held on December 10, 2002, the court finds that the plaintiffs are aggrieved.
Background
The plaintiffs, Daniel W. Kobyluck and Maureen A. Kobyluck, are the CT Page 1601 owners of the subject parcel which consists of approximately 65 acres located in a R-120 zone off of Oxoboxo Dam Road, Montville. (ROR 3.) The plaintiff Kobyluck Sand Gravel, Inc., the applicant, conducts excavation and processing operations on the site. Gravel excavations on the subject parcel have been conducted since at least 1980. (ROR 4.a-5.) Excavations began in the easterly end of the parcel in an area designated as Phase 1 and proceeded westerly in phases. The phases are designated 1 through 5. The excavation proposed under the subject application would create a pond by removing approximately 20,000 yards of material from Phase 5. The proposed excavation would complete the excavation operations at the site. (ROR 63, pp. 24, 27.)
Both the plaintiffs and the defendants acknowledge that, in addition to material excavated on site, material is trucked in from off the site for processing at the site. There are two types of processing permitted under § 17.8 Excavations/Filling Operations, of the Montville Zoning Regulations (Regulations), screening type processing and crushing type processing, the latter is allowed only in a commercial district. (ROR 1.) Both types of processing operations are conducted on the site in Phases 1, 2 and 3. (ROR 63, p. 12.) The plaintiffs claim they have a right to conduct screening and crushing processing of on-site and off-site materials under a variance which was granted in 1979. The plaintiffs also claim the Commission approved of such activities at earlier meetings. (ROR 63, p. 7.) The Commission, and the intervenors, claim that the plaintiffs have no right to process off-site materials and that such activities are expressly prohibited by § 17.8.3A.7 of the regulations. Much of the testimony at the public hearing dealt with the effects of truck traffic caused by bringing in off-site material for processing. The other major issue discussed at the public hearing was the remaining life of the excavation/processing operation. Because the plaintiffs believe that the processing activity is not limited to the material to be excavated on the site, they have no present intentions of closing down the site after the Phase 5 excavation is completed. (ROR 63, p. 51.)
The plaintiffs received approval for the proposed activity from the Montville Inland Wetlands Commission on February 17, 2000. It was a condition of approval that "the site work will be completed no later than three years after the approval by the Planning Zoning Commission, but no later than the third year planting season." (ROR 4, A-2.)
At the April 25, 2000 meeting, Commissioner Tinnel made a motion to approve a special permit. (Supplement to Record, dated June 11, 2002, Transcript of April 25, 2000 meeting of the commission, [Transcript, April 25, 2000] pagination supplied by the court, p. 8.) Commissioner CT Page 1602 Tinnel stated in his motion, "[t]his permit is being issued, consistent with the Inland Wetlands permit issued to the Applicant to remove 20,000 cubic yards of earth material as shown in Section 5 of the application site plan." (Transcript, April 25, 2000, p. 11.) The permit was approved with ten conditions, several of which mandate closure of the operations on Phases 1 through 4 within 120 days, and prohibit any off-site material from being processed at the site.
Discussion
It is apparent from a review of the transcript of the March 14, 2000 public hearing, and other portions of the record, the defendants have conducted a large-scale gravel excavation/processing operation at this site for many years. Mr. Kobyluk testified there is presently approximately 80,000 cubic yards of material located in Phases 1 through 4, most of which is located in stock piles. This is separate from the 20,000 yards of material sought to be removed under the subject special permit. (ROR 63, p. 99.) Between twenty and twenty-five trucks per half hour exit and enter the site. (ROR 63, p. 81.)
Ms. Vlaun, planning director, testified as to the long history of activities at the site. The history began in 1978 and included the permits obtained in the 80s and 90s. (ROR 63, pp. 64-86.) The last permit for the site expired in 1999. Although cease and desist orders were issued on March 10, 1999 and October 9, 1999, processing activities continue at the site. (ROR, p. 82.)
A variance issued on January 12, 1979 by the Montville Zoning Board of Appeals permeates this case. About this variance Ms. Vlaun stated, "The variance referred to of January 12, 1979, I think it is known that the Commission — that the applicant has taken the position that it is a use variance that allows them to process material on the site. And the Commission has taken the position that the variance is specific for material excavated from the site. And therein lies a difference of opinion between the Commission and the applicant." (ROR 63, p. 85.)
In light of this history, it is important to focus on the activity the Commission approved when it granted the special permit. The permit allowed the removal of 20,000 cubic yards of earth material from Phase 5 of the application site plan. The activity approved was specifically allowed by special permit under § 17.8 of regulations and the Commission found the activity to be "consistent with the uses permitted in the R-120 Zone." (Transcript, April 25, 2000, p. 11.) "When a zoning commission states the reasons for its action, `the question for the court to pass on is simply whether the reasons assigned are reasonably CT Page 1603 supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations.'" (Internal quotation marks and citation omitted.) DeMariav. Planning and Zoning Commission, 159 Conn. 534 (1970).
The motion to approve the special permit contained the following: "The Commission relies here on the statements by the applicant in the Inland Wetland and Watercourse Permit Application [ROR 4, A-3], `the purpose of the pond is to enhance the property's value, from both an aesthetic and recreational standpoint, for future use such as residential development.' " (Quotation marks in original.) (Transcript, April 25, 2000, p. 11.) This reference to the record is sufficient to support the decision of the Commission to approve a special permit for the stated activity.
Although the plaintiffs' application used the term "renewal," it is abundantly clear from Commissioner Tinnel's motion the Commission approved a new permit for the Phase 5 excavation and did not issue a renewal permit for any other existing activity. As noted previously, the plaintiffs did not raise the issue of the scope of the special permit approved in their appeal.
The Commission imposed ten conditions upon the special permit approval. It is the plaintiffs' claim that all, except for the bond condition, are invalid. The Commission, and the intervenors, maintain the conditions are authorized by the regulations and supported the evidence contained in the record.
Under § 17.4 of the regulations, a special permit application must contain a site plan meeting § 18 Site Plans of the regulations. Both the Commission and the intervenors point to the preamble of § 18.5 as the basis for the Commission's authority to impose the conditions. That preamble states, "In reviewing a site plan application, the Commission shall take into consideration the public health, safety and welfare of the public in general and the immediate neighborhood in particular, and may prescribe reasonable conditions and safeguards to insure compliance with following general objectives:"
In addition to the Commission's authority to impose the conditions, the court must also examine the reasons assigned by the Commission when it imposed the conditions. The motion to approve the special permit made at the April 25, 2000 meeting is informative. At the beginning of the Commission's deliberations on April 25, 2000, Ms. Vlaun, the town planner, read a draft motion the planning staff prepared. (Transcript, April 25, 2000, p. 2.) After reading the lengthy draft motion, Ms Vlaun suggested the Commission discuss it. (Id., p. 7.) After a very brief CT Page 1604 discussion, a motion was made by Mr. Tinnell, who then read the motion that Ms. Vlaun had read earlier. (Id., pp. 8-13.) The contents of the motion will be referred to, where appropriate, in the discussion of the conditions.
Condition 1. "The applicant must comply with all provisions of section 17.8 of the Zoning Regulations."
The Commission points out in its brief that the preamble to § 17.8 Excavations/Filling Operations states, "An applicant proposing to establish this use shall comply with the provisions of these Regulations including the following additions requirements." Since this condition is already contained in the regulations, the court concludes it is not necessary or appropriate for it to be included in the approval of the special permit. Furthermore, it is not essential or integral to the approved activity. Condition 1 is found to be invalid.
Condition 2. "The applicant must close Phases 1, 2, 3 and 4 of the site within 120 days of the issuance of this permit. Closure will be completed in compliance with Section 17.8 of the Zoning Regulations."
The Commission and intervenors point to the testimony of Mr. Strouse, the applicant's engineer, who said most of the excavation in Phases 1 through 4 had been performed and the material to be removed was in stockpiles, and in the area between the stockpiles. From this testimony they claim it is reasonable for the Commission to mandate a closure of Phases 1 through 4 before a permit for the Phase 5 excavation is issued. These stockpiles are part of the ongoing processing operations conducted in Phases 1, 2 and 3. (ROR 63, pp. 93-95.) The commission ignored the testimony of the applicant's attorney who said the applicant intended to conduct processing operations on Phases 1, 2 and 3 after Phases 4 and 5 were closed. (ROR 63, p. 12.)
"A special permit allows an applicant to put his or her property to a use that is expressly permitted under the regulations. [T]he conditions under which a special [permit] is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by the regulations, it is void." (Brackets in original; citation omitted; internal quotation marks omitted.) Hochberg v. Zoning Commission, 24 Conn. App. 526, 529 (1991).
Section 17.8 Excavations/Filling Operations of the regulations does not contain any regulations which mandate closure of one area of excavation before another area may be excavated nor is there such a requirement in § 18 Site Plans. The intervenors claim that this condition is CT Page 1605 authorized under Section § 18.5.7 of the regulations which states in part, "Development of the property should preserve to the maximum extent possible sensitive environmental land features such as . . . wetlands . . ." The subject activity was approved by The Inland Wetlands Commission and it does not take place in the areas of the site that the condition mandates be closed. Section 18.5.7 does not authorize imposition of condition 2.
"In those cases deciding that a condition is invalid, the universal thread, as is true in cases upholding the validity of the condition, rests on the closeness of the relationship of the condition to the action sought from the zoning entity and whether the entity had the authority to require the condition. A condition is void . . . if the condition bears no relationship to the action sought from the zoning authority and is not an essential or integral part of it." (Citations omitted.) Gay v. ZoningBoard of Appeals of Westport, 59 Conn. App. 380, 386 (2000).
In this case the Commission specifically approved removal of 20,000 cubic yards of material from Phase 5. The condition requiring Phases 1, 2, 3 and 4 to close in 120 days was not related to, or essential to, the activity sought from the Commission nor was it authorized under the regulations. For the foregoing reasons, condition 2 is found to be invalid.
Condition 3. "Any material currently stockpiled on the site may be removed from the site. However, it may not be processed on the site. No material may be brought in from off site to be processed on this site."
The Commission correctly states that processing of off-site material in a R-120 Zone is neither a permitted use nor an activity which can be undertaken with a special permit. The special permit approved was only for excavation in Phase 5, processing of stockpiled material was not included. By including condition 3, the Commission was attempting to regulate processing activity being conducted in other portions of the site. This condition is invalid under Gay since it bears no relation to the action sought from the Commission.
The prohibition against bringing in off-site material for processing is obviously an attempt by the Commission to enforce its regulations against the applicant, which claims it has the right to conduct such activities under the 1979 variance. In the case of Beckish v. Planning ZoningComm., 162 Conn. 11 (1971), a zoning commission sought to condition a special permit upon the removal of non-conforming signs. The holding of the Supreme Court in that case is apropos here, "The issue as to theCT Page 1606validity or legality of the free-standing signs, if questioned, can onlybe determined through another legal process and is not, under thecircumstances, an issue to be resolved in the present proceeding. The conditions imposed in this case by the Commission were not an essential or integral part of the permissible, required action of the defendant commission based on the application of the plaintiffs . . ." (Emphasis supplied.) Id. 18.
The required action in this case was the consideration of a special permit for future excavation in Phase 5. This condition is an impermissible attempt by the Commission to enforce the regulations upon activities the applicant conducts in other portions of the site.
Condition 4. "Any equipment and buildings, other than that equipment necessary to excavate and screen the 20,000 cubic yards of earth material and the garage which houses automobiles, must be removed from the site within 120 days of the issuance of this permit. Any screening equipment remaining on the site must comply with Section 17.8 of the Zoning Regulations."
This condition is another effort by the Commission to close down the operations taking place on areas of the site other than where the approved excavation is to take place. For the reasons stated in the discussion of conditions 2 and 3, this condition is found to be invalid.
Condition 5. "Any disturbed areas beyond the limits of Phases 1 through 5 will be allowed to revegitate."
Clearly by its terms, this condition does not relate to the activity approved by the Commission, the removal of 20,000 cubic yards of earth material from Phase 5. In accordance with Gay, this condition is found to be invalid.
Condition 6. "The excavation of 20,000 cubic yards of earth materials from the proposed pond will be completed within three years of the date of this Special Permit. However, the excavation approved for Phase 5 may not commence until Phases 1 through 4 have been closed and the provisions outlined in condition 4 have been complied with."
The first sentence of this condition tracks the earlier approval given by the Inland Wetlands Commission for this activity approved by the Commission. That portion of the condition is supported by the record and is valid. Since the special permit was approved almost two years ago, the three-year limitation is modified to commence with the issuance of the special permit. The balance of the condition is related to the CT Page 1607 Commission's impermissible efforts to close Phases 1 through 4. For the reasons stated in the discussion of conditions 2 and 3, the second sentence of condition 6 is found to be invalid.
Condition 7. "The Applicant will file quarterly progress reports with the Commission, which must contain information regarding the status of the closures of Phases 1 through 4 and progress of the excavation of Phase 5."
This condition is also related to the Commission's impermissible efforts to close Phases 1 through 4. As to the inclusion of Phase 5, there is no regulation in § 17.8 requiring quarterly progress reports on the excavation. Under Beckish and Hochberg, condition 7 is found to be invalid.
Condition 8. "Failure to comply with any provisions of this Special Permit will result in permit revocation."
Under § 4.7 of the regulations, the Commission or its designated agent, the enforcement officer, has the general authority to enforce the regulations. The Commission and the intervenors do not direct the court to a specific regulation authorizing the condition. This condition is found to be unnecessary and not authorized by the regulations.
Condition 9. "This Special Permit is the only active permit for this site. Any other activities not approved in this permit, other than uses allowed by right in the R-120 Zone, are in violation of the Zoning Regulations, and these activities will cease in accordance with the stipulations of the Special Permit."
This condition is the final effort the Commission made to enforce its regulations in the guise of acting upon the special permit application. It is both a quasi-judicial ruling on the validity of the 1979 variance, and a cease and desist order on all activities not specifically approved in the special permit. The court notes that during the brief discussion on the motion to approve, Acting Chairman Charland stated, "I think the motion was very well put together and addresses our concerns, the concerns of the people of the town. Hopefully it will resolve the problems we have had with the gravel bank — gravel operation." (Transcript, April 25, 2000, p. 7.) It appears the Commission lost sight of its responsibilities when acting on this application. "When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are CT Page 1608 satisfied . . . It has no discretion to deny the special exception if the regulations and statutes are satisfied." (Citations omitted.) Daughtersof St. Paul v. Zoning Board, 17 Conn. App. 53 (1988).
When it acted on this application, the Commission sought to do much more than approve it. The motion to approve the special exception contained a recitation of certain zoning regulations in effect in 1979 and a pronouncement of the scope and effect of the 1979 variance. (Transcript, April 25, 2000, pp. 9-10.) The motion also stated that certain activities conducted by the plaintiffs at the site violated the regulations. (Id., p. 10-11.) In adopting this condition, the Commission exceeded its scope of administrative review and sought to use the approval process as a lever to get the plaintiff to abate what the commission perceived to be zoning violations. See Garrison v. PlanningBoard, 66 Conn. App. 317 (2001). For this reason, and the reasons given above, this condition is found to be invalid.
Condition 10. "The Applicant will post a bond, acceptable as to form by the Finance Director, in the amount of $160,000. This bond must be posted prior to issuance of a Zoning Permit."
A bond is authorized in § 17.8.7 of the regulations. There is sufficient evidence to support the bond amount. (ROR 63, p. 85.) The condition is found to be valid.
Having found certain conditions to be invalid, the court must determine if there are sufficient grounds to support the approval of the special permit. "The dispositive consideration in determining whether modification or reversal is in order is whether the illegal conditions are an `integral' part of the zoning authority's decision." Floch v. Planning Zoning Commission, 38 Conn. App. 171, 173 (1995).
The motion to approve the special exception stated that the purpose of the pond resulting from the proposed excavation would be consistent with uses permitted in the R-120 zone. The motion also stated that permit was issued "consistent with the Inland Wetlands permit issued to the Applicant." (Transcript, April 25, 2000, p. 11.) The impermissible conditions are found to be invalid, not because of their effect upon the proposed approved activity, but because they attempted to affect other existing activities at the site. The court cannot conclude that such invalid conditions are integral to the Commission's approval of the proposed activity. Since the decision to approve the special permit is supported by the record, it will not be reversed.
In light of the conclusions reached, it is not necessary to address the CT Page 1609 other issues raised by the plaintiffs.
Considering the claims made by the parties in briefs and in argument, the court believes it is necessary to expressly define the parameters of this decision. The conclusions reached herein are not intended to validate or invalidate the plaintiffs' claims surrounding the 1979 variance and/or their claimed right to conduct the existing activities. Similarly, the conclusions reached herein do not in any way affect the ability and right of the Commission, or intervenors, to take action to enforce the zoning regulations, if they deem it appropriate to do so.
Conclusion
The appeal is sustained and the decision of the Commission is modified. The approval of the special permit for the excavation of 20,000 cubic yards of earth material from Phase 5 of the site plan is affirmed; however, only the following conditions are found to be valid:
1. The excavation of 20,000 cubic yards of earth materials from the proposed pond will be completed within three years of the issuance of the special permit.
2. The applicant will post a bond, acceptance as to form by the Finance Director, in the amount of $160,000. This bond must be posted prior to issuance of a Zoning Permit.
Domnarski, J. CT Page 1610